

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00244-CR

**HERMAN P. GULLATT, JR.,**

**Appellant**

v.

**THE STATE OF TEXAS,**

**Appellee**

### From the 13th District Court
### Navarro County, Texas
### Trial Court No. 31,934-CR

## O P I N I O N

Appellant was convicted by a jury of the felony offense of possession of methamphetamine in an amount of over 1 gram but less than 4 grams with intent to deliver. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (c) (West 2010). The State also alleged that appellant had two prior felony convictions. TEX. PENAL CODE ANN. § 12.42(d) (West 2011). Appellant pled true to these enhancement allegations. Following a punishment hearing, the trial court found the enhancement paragraphs to be true and assessed appellant's punishment at 60 years in prison. Appellant appeals.

In eight issues, appellant complains that the evidence was both legally and

factually insufficient, trial counsel rendered ineffective assistance, the drug evidence should have been suppressed, the jury should have been instructed on the legality of the search, the trial court improperly amended the indictment, the jury's verdict improperly convicted appellant of an offense not charged and that he was denied his right to a speedy trial and even to present evidence regarding his speedy trial motion. We overrule these issues and affirm the conviction.

## BACKGROUND FACTS

During the early morning hours of February 24, 2008, two Kerens Police Department officers observed a white pickup truck parked just off the highway at the entrance of a long residential driveway. They stopped to investigate. As they approached, they noticed the defendant in the driver's seat. After the defendant rolled down the window, Officer Chamblee observed blood on the inside of the driver's door. He then asked the defendant to exit the vehicle and for some identification. The defendant went through items in both the front and back seats before he finally exited the vehicle and produced some identification. The defendant then got back into his vehicle, rolled up the windows, and locked the doors. Officer Chamblee eventually was able to talk the defendant out of his vehicle where the defendant refused to be patted down and became argumentative. The officer called for backup. At this time, the dispatcher informed Chamblee that appellant had an outstanding arrest warrant for a traffic offense. When the backup officers arrived, appellant was patted down, handcuffed, and placed under arrest for the traffic warrant.

Officer Chamblee inspected the back seat area of his patrol car just as he had

done at the beginning of his shift and after he transported an earlier prisoner. On all three occasions, the back seat area was clean and free of contraband. He placed appellant in the back seat of his patrol car, transported him to jail, and turned him over to the jail personnel. Chamblee then inspected the back seat area of his patrol car. He found two baggies which laboratory analysis later determined contained 3.5 grams of methamphetamine. Chamblee seized the baggies, went into the jail, and observed the jailers when they found two baggies of white powder in appellant's mouth. The white powder in those baggies was determined not to be an illegal substance but all four baggies were similar.

At trial, Elmer Tanner and Stan Farmer both testified they were experienced law enforcement officers with the majority of their careers in narcotics. They both gave their expert opinion that based on the quantity of methamphetamine, the number of baggies, and other facts in the case, appellant's possession was with the intent to deliver.

## SUFFICIENCY OF THE EVIDENCE

Appellant's first two issues argue that the evidence was both legally and factually insufficient to support the conviction. The "factual insufficiency" issue was premised on the Court of Criminal Appeals' holding in *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996). Since appellant's brief was filed, *Clewis* was overruled. *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Under *Brooks*, the dual concepts of "factual insufficiency" and "legal insufficiency" are now a single "sufficiency" standard, as was articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under that standard, when

reviewing the sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319.

Appellant presents a three-pronged argument about the sufficiency of the evidence. First, there are insufficient affirmative links to actually tie him to the methamphetamine. Second, the overall evidence does not support the "with intent to deliver" element. Finally, the "chain of custody" concerning the seized evidence was so deficient that it has "no legal weight at all."

LINKS

The evidence linking appellant to the methamphetamine consisted of Officer Chamblee's testimony that he had searched the back of his patrol car both after he had transported his last prisoner and immediately before placing appellant in the patrol car. After he delivered appellant to the jail, he again searched it and found the methamphetamine under the back seat where appellant had been sitting. Such a patrol car search, before and after a prisoner is transported, is a standard law enforcement practice. Occasionally, as was the case here, contraband is found in the area where the prisoner was seated.

In *Garcia v. State,* 871 S.W.2d 769 (Tex. App.—Corpus Christi 1994, pet. ref'd), the arresting officer had followed a similar procedure of searching before and after he transported a prisoner to the police station. In the second search, the officer found a syringe, three small baggies of cocaine and some marihuana under the back seat cushion where the prisoner was sitting. The *Garcia* court concluded that the evidence

was sufficient to link the defendant to the drugs. *Id*. at 271. Other courts, confronted with nearly the same facts and arguments, have likewise concluded that the evidence was sufficient. *E.g.*, *Jackson v. State*, No. 08-10-00105-CR, 2011 WL 1642617 (Tex. App.—El Paso, April 29, 2011, no pet.) (not designated for publication) (baggie of cocaine found under the seat cushion); *Renteria v. State*, No. 03-96-00736-CR, 1997 WL 528970 (Tex. App.—Austin, August 28, 1997, no pet.) (not designated for publication) (baggie of methamphetamine found stuffed behind the seat).

The logic of these prior cases applies equally in this case. The jury heard the evidence and could rationally have concluded appellant placed the methamphetamine in the back of Officer Chamblee's patrol car.

**INTENT TO DELIVER**

The second prong of appellant's sufficiency argument is that the evidence to show "intent to deliver" was insufficient. In addition to the facts of the case, the State called two expert witnesses to testify that in their opinion, appellant possessed the methamphetamine with intent to deliver. The officers had 11 and 6 years, respectively, of narcotics experience in Navarro County. They testified about how it is sold and used specifically in their locale. They talked about the differences they would find in cases where an individual merely possessed the drug and a situation where an individual possessed it with intent to deliver. Based upon the quantity of drugs, the additional baggies in appellant's mouth, the other facts of the case and the expert testimony, a rational trier of fact could conclude that appellant's possession was with the intent to deliver.

**CHAIN OF CUSTODY**

The third prong of appellant's sufficiency argument is that the "chain of custody" concerning the drug evidence was deficient. Officer Chamblee testified that after he seized the evidence from his patrol car, it field-tested positive for methamphetamine, he personally transported it to the Kerens Police Department, placed it in an envelope, and then placed the envelope in a secure lock box. Chief Leonard Slamcik testified he retrieved the envelope from the lock box and took it to the DPS lab in Waco where it was tested. The DPS chemist testified she received the envelope from Chief Slamcik, tested the suspected drugs, and found it was 3.5 grams of methamphetamine. The testimony regarding the various envelopes in which the drugs were contained is at times confusing. Testimony also contains several references to "the evidence" rather than to the specific exhibit number or numbers. However, no objection was raised to the admission of any of the exhibits or the testimony of the chemist.

Absent evidence of tampering or fraud, problems with the chain of custody do not affect the admissibility of evidence. *Druery v. State*, 225 S.W. 3d 491, 503 (Tex. Crim. App. 2007). The record clearly shows that the evidence seized was placed in the secure Kerens Police Department lock box. The evidence was transported to the lab where the chemical analysis showed it was 3.5 grams of methamphetamine. Despite some confusion over the envelopes in court and some imprecise testimony regarding the evidence, a rational trier of fact could have concluded that the item seized from the back seat of Officer Chamblee's patrol car was the same item determined by the DPS lab to

be 3.5 grams of methamphetamine.

All three prongs of appellant's attack on the sufficiency of the evidence fail. Appellant's first two issues are overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Next, appellant complains that he was denied the effective assistance of counsel. Appellant's complaint is based exclusively on counsel's failure to object to two items of evidence: 1) the drug evidence because the chain of custody was not properly established and 2) the baggies found in appellant's mouth, again, because they were not properly authenticated.

In order to prevail on a claim of ineffective assistance of counsel, appellant must show 1) that his attorney's performance was deficient and 2) that the deficiency was so serious that it prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex. Crim. App. 1986). We need not address the second portion of the *Strickland* standard because the record fails to show that trial counsel's performance was deficient.

As we noted earlier in our discussion of the sufficiency of the evidence, problems with the chain of custody go to the weight rather than the admissibility of the evidence. *Druery v. State,* 225 S.W.3d 491, 503 (Tex. Crim. App. 2007). Given the facts of this case, any objection made by appellant's counsel on the chain of custody issue could properly have been overruled.

Regarding the baggies recovered from appellant's mouth, appellant's attorney objected to their admission on grounds of relevance. His objection was overruled.

Appellant's argument now is that he should have also objected that the baggies were not properly authenticated.

Evidence of the baggies being found in appellant's mouth had previously been admitted in testimony from Officer Chamblee. There was no basis for objecting to this testimony and no objection was made. The admission of the actual baggies was simply cumulative of evidence the jury had already heard. Even had counsel made such an objection and even if the trial court sustained it, the prosecution may well have countered by recalling Officer Chamblee to either identify the baggies or establish that the baggies were at least similar to the ones found in appellant's mouth and offered them as demonstrative evidence. Counsel's decision not to object on the grounds of authenticity simply does not fall outside of the bounds of the professional norm for reasonableness.

Counsel's action in both the complained of incidents was not deficient. The third issue is overruled.

## SEARCH AND SEIZURE

Appellant next complains that "evidence was obtained as a result of the illegal detention of appellant without probable cause or reasonable suspicion." A motion to suppress was held immediately prior to the beginning of the trial testimony.

The trial court did not enter findings of facts and conclusions of law. He did deny the motion to suppress. The facts show routine police action of approaching a parked, unoccupied vehicle at 3:00 a.m. located just off the highway at the beginning of a long residential driveway. When the officers realized it was occupied, they engaged

in a consensual encounter with the appellant, observed blood on the inside of the driver's door, asked for and obtained identification, ran a warrants check, and asked appellant to step out. While appellant did step out, he declined to be frisked and re-entered his vehicle. The dispatcher notified the officers of an active arrest warrant within approximately four minutes. The trial court would be fully justified in determining that the identification was obtained during a consensual encounter between the officers and appellant. The trial court would be equally justified in determining that, if at some point during the four-minute wait, the "encounter" became a detention, that such a brief investigative detention was justified based on the totality of the circumstances including the blood on the driver's door.

However, we need not reach the merits of appellant's claims. When the methamphetamine was offered into evidence, defense counsel affirmatively stated, "We have no objections."

When a pre-trial motion to suppress is overruled, a defendant need not make a subsequent objection to the same evidence to preserve error. *Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985), overruled on other grounds, *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). However, if he affirmatively states at trial that he has "no objection" to that evidence, he waives any error despite the pre-trial ruling. *Id.*; *see Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008).

Appellant obtained an adverse ruling on his motion to suppress. However, at trial, he waived any error by affirmatively stating that he had "no objections." Appellant's fourth issue is overruled.

**JURY INSTRUCTION ON VALIDITY OF THE SEARCH**

Appellant's next issue complains that the trial court denied his requested jury instruction concerning the validity of the search under Article 38.23 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). Although his affirmative statement of "no objections" waived his right to complain on appeal concerning the judge's decision to admit the evidence, it does not waive his right to receive a jury instruction under Article 38.23. *Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008). We will, therefore, consider the merits of appellant's claim.

A defendant is entitled to a jury instruction under Article 38.23 when there is a "genuine dispute about a material fact." *Madden v. State*, 242 S.W.2d 504, 510 (Tex. Crim. App. 2007). The *Madden* court explained that the charge should be given when there is a specific historical fact or set of facts, material to the legal determination, put in dispute before the jury. Thus, when an officer testified he stopped a defendant going 61 m.p.h. in a 55 m.p.h. zone, and the defendant stated that he was going 55, the specific historical fact of whether or not he was speeding could be submitted to the jury in an Article 38.23 charge. However, the defendant was not entitled to a charge on the general legal issue of whether or not the officer had "reasonable suspicion" to continue the detention of the defendant. *Id.* at 511.

At trial, appellant's counsel did not articulate any historical fact in dispute when asking for the charge. He argued for an instruction about "totality of the circumstances" and "reasonable suspicion." Again, on appeal, appellant talks about "detention" and "reasonable suspicion." The closest appellant comes to identifying a

disputed fact is an argument about "whether appellant complied with their request or whether he did not" and "whether it was a driveway to a residence as the State claims or whether it was simply an open field as appellant claims." Initially, we note that while appellant testified outside the jury's presence at the pre-trial suppression hearing, he did not testify in front of the jury. Officer Chamblee was the only witness who testified about the driveway and about appellant's compliance with his requests. Nowhere in Chamblee's jury testimony – direct, cross-examination or when he was recalled by the defense – was any disputed fact developed.

Since there were no genuine disputes about material facts developed in front of the jury, appellant was not entitled to his requested jury instruction. Appellant's fifth issue is overruled.

## AMENDMENT TO THE INDICTMENT

In his next issue, appellant contends that when the trial court permitted the State to amend the indictment his substantive rights were prejudiced. The original indictment charged possession of methamphetamine, with intent to deliver, in a quantity of 4 grams or more but less than 200 grams. The State filed a motion to amend the indictment to change the amount to 1 gram or more but less than 4 grams. After a hearing, the motion was granted by the trial court who then signed a written order containing the entirety of the amended indictment. The hearing was held and order signed more than two months prior to the trial. The process of amending the indictment was in full compliance with the statutory procedures. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2010).

Appellant's argument is twofold: First, the amendment charges a different offense and, second, the grand jury that indicted him was not presented with evidence of the proper weight of the methamphetamine. Under appellant's argument, either of these situations violates the statute authorizing amendments. *Id*. at (a).

**DIFFERENT OFFENSE**

As to his first argument, appellant was originally indicted for possession of a controlled substance with intent to deliver under Section 481.112(a) of the Texas Health & Safety Code. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). The amended indictment charges him with the identical offense under the same statutory section. The charging instruments differ only in the quantity of the methamphetamine allegation. The punishment range for the original quantity is a first degree felony set out in Section 481.112(d). *Id*. at (d). The punishment range for the amended quantity is a second degree felony set out in Section 481.112(c). *Id*. at (c).

A similar contention was raised in *Flowers v. State*, 815 S.W.2d 724 (Tex. Crim. App. 1991). The *Flowers* court gave a broad reading to the term "different offense." It determined that any reading other than a different *statutory* offense would nullify the entire purpose of Article 28.10. *Id*. at 728.

We need not explore the parameters of what a "different offense" means. Both the original and amended indictment contains the *identical* offense. The fact that the punishment range is different, and involves a different subsection of the same statute, does not transform the charge into a "different offense" as that term is used in Article 28.10(c). TEX. CODE CRIM. PROC. ANN. art. 28.10(c) (West 2006).

## GRAND JURY

The second portion of appellant's argument is that his substantial rights were prejudiced because the grand jury was not informed of the correct weight of the methamphetamine. The record does not contain any information about what evidence the grand jury heard. Appellant cites no authority for this portion of his argument.

At trial, the evidence showed that the drug exhibit submitted to the crime lab weighed 4.9 grams. When the packaging was removed, the actual methamphetamine weighed 3.5 grams. Also at trial, the State offered two expert witnesses to testify that the methamphetamine was possessed with intent to deliver.

Appellant invites this Court to speculate that a grand jury might view 200 grams of methamphetamine in a different light than 1 gram for the purpose of returning an indictment that alleged "with intent to deliver." We decline to engage in any such speculation. The State possessed evidence which convinced a trial jury of the "with intent to deliver" element. It is reasonable to assume that some form of that evidence was presented to the grand jury.

On the record before us, we do not conclude that any substantial right of appellant was affected. Appellant's issue is overruled.

### CONVICTION FOR OFFENSE NOT CHARGED

Next, appellant contends that he was convicted of an offense not charged in the indictment. The crux of this argument is that the trial judge granted the state's motion to amend the indictment and signed an order which conformed to his ruling. The motion and order both allege the offense for which appellant was convicted. However,

the original indictment was also changed by handwritten notations to conform to the judge's ruling. Additionally, the "with intent to deliver" allegation was struck out. These changes were initialed, presumably by the trial judge, but not dated.

In order to amend an indictment, it must be authorized by both a motion and order to do so. *Riney v. State,* 28. S.W.3d 561, 566 (Tex. Crim. App. 2000). Once the authorization exists, the trial court may do the actual amending by either writing on the original indictment or signing or otherwise authorizing an appropriate order. *Id.*

In the instant case, there was no motion or order authorizing the court to amend the indictment by deleting the "intent to deliver." There was both a motion and written order, signed by the trial court, changing the quantity of the methamphetamine allegation. The only effective amendment to the indictment was this signed order which was properly authorized. The judge's mistaken deletion of the "intent to deliver" language on the original indictment was unauthorized and of no legal effect.

We also note that at trial, all parties understood that the defendant was charged with possession with intent to deliver. The jury was properly charged on that offense. Indeed, the court's charge even included a lesser included offense for possession of more than 1 gram but less than 4 grams without intent to deliver.

There being no error, appellant's seventh issue is overruled.

## SPEEDY TRIAL

Appellant's final issue is that the trial court erred in not dismissing the case because appellant's right to a speedy trial was denied.

Appellant was arrested on February 24, 2008. He was appointed a lawyer two

days later. An indictment was returned on March 20, 2008.

On August 18, 2008, appellant's attorney filed a discovery motion. On September 11, 2008, appellant filed a *pro se* "Motion to be Heard on Due Process of Law." On the same day, his attorney filed a motion to suppress. The record does not show any immediate action being taken on these motions.

In late January, 2009, appellant filed a series of *pro se* motions. These included a motion to have the case dismissed because he hadn't been afforded a speedy trial. He also filed a motion to represent himself. In the motion, he indicated he wanted to keep his court-appointed attorney as stand-by counsel.

In early February, appellant's attorney filed a supplemental discovery motion and a *Brady* motion. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Also, in early February, appellant sent a letter to the trial court which congratulated him on his recent election and explained appellant's side of the case. On February 9, 2009, a hearing was held on appellant's motion to represent himself. Shortly thereafter, the trial judge granted appellant's motion to represent himself with his attorney acting as stand-by counsel. As subsequent proceedings showed, the representation, with appellant's full approval, was actually a hybrid counsel arrangement with the licensed attorney doing nearly all the pre-trial questioning and arguments and all of the trial work in front of the jury.

As motions were being filed in late January and early February, there were evidently discussions about a resolution of the case going on between the State and defense. Appellant was given a polygraph, likely in early February, which he did not

pass.

On March 10, 2009, a pre-trial hearing was held. On the same day, the State filed a motion to amend the indictment. At the hearing, appellant objected to hearing the motion to amend the indictment because he had no prior knowledge of it. He did indicate that he would be moving to dismiss the case because the State did not have a valid indictment within 180 days.[1] The trial court agreed not to take up that motion, told the parties to submit authorities, and continued by asking what other pre-trial matters needed to be taken up. Appellant's attorney indicated the only thing that needed to be taken up were the defense's discovery motions. The court and parties then considered each of the 25 items in the original discovery motion and the four items in the supplemental motion. The hearing ended with an agreement that they would get a date to hear the State's motion to amend the indictment. At no point in the hearing did appellant or his attorney urge their motion for a speedy trial or even inquire about a trial date.

On March 25, 2009, another pre-trial hearing was held. After hearing arguments, the court granted the State's motion to amend the indictment. Again, neither appellant nor his attorney urged their motion for a speedy trial or inquired about a trial date. No trial date had been set.

On May 19, 2009, a hearing was held on appellant's motion for a speedy trial. At this point, a trial date of June 8 had recently been set. The State argued that since the

---

[1] This argument was part of appellant's *pro se* speedy trial motion. It was based on TEX. CODE CRIM. PROC. ANN. art. 32.01 (West 2006). Since the State had obtained a valid indictment, even if it was later amended, appellant's argument is without merit. *Cameron v. State,* 988 S.W.2d 835, 843 (Tex. App.—San Antonio 1999, pet. ref'd).

trial date had been set, the motion was moot. The trial court indicated that he tended to agree but that counsel could proceed. The attorney then offered to proceed with an offer of proof. The court indicated his approval of that approach. Appellant then took the stand and testified to his satisfaction with his attorney. Counsel then made an offer of proof which detailed what appellant's testimony would be concerning the speedy trial issue.[2] The State then indicated it had been ready for trial but didn't otherwise respond.

At the conclusion of the hearing, the trial court determined that appellant's case was second on the docket to a CPS (Child Protective Services) case that was running up on its statutory deadline. The court indicated that he would make sure that appellant's case was heard on June 8th even if he had to bring in a visiting judge. The actual trial did occur on the June 8th date.

An accused is guaranteed the right to a speedy trial by the Sixth Amendment to the United States Constitution. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed 2d 101 (1972); *Zamorano v. State*, 84 S.W.3d 643 (Tex. Crim. App. 2002). *Barker* sets out four factors that must be considered in analyzing a speedy trial claim: 1) length of delay, 2) reason for delay, 3) assertion of the right, and 4) prejudice to the accused. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). The State has the burden of justifying the length of delay while the accused has the burden of proving that he asserted the right and showing prejudice. *Id*. The *Barker* factors are not weighed equally; rather, the

---

[2] Part of appellant's issue is that he was denied the right to put on evidence at the hearing. The record does not support that allegation. While use of the offer of proof was unorthodox, it was evidently agreed to by all parties. No error is shown.

accused's burden on the last two factors varies inversely with the State's degree of culpability for the delay. *Id.* Thus, the longer the delay and the more bad faith or negligence attributed to the State, the less an accused must show on the prejudice and diligence in asserting the right. *Id.* at 280-81. Conversely, the shorter the delay and the less bad faith or negligence, the more an accused must show on the prejudice and diligence factors.

The trial court did not make any explicit findings of fact or conclusions of law. We, therefore, presume that the trial court resolved any disputed fact issues in favor of the State. *Hunt v. State,* 237 S.W.3d 434, 436 (Tex. App.—Waco 2007, pet. ref'd). We also defer to any implied findings supported by the record. *Id.*

LENGTH OF DELAY

Initially, we must look at the length of delay to determine if it was unreasonable enough to be "presumptively prejudicial." A delay of four months has been held not to meet this threshold; a delay of 17 months has been held to meet it. *Pete v. State,* 501 S.W.2d 683, 689 (Tex. Crim. App. 1973); *Phillips v. State,* 650 S.W.2d 396, 399 (Tex. Crim. App. 1983). Courts generally find the requirement to be met somewhere around the one year mark although that depends on the unique facts of each case. *See Cantu,* 253 S.W.3d at 281, n.21.

In our case, the delay was 15½ months. While there is not a huge difference between a delay approaching one year and a 15½ month delay, it is still a difference. This was not a case involving necessary delays for extensive DNA or other scientific testing. It did not involve co-defendants who could not be tried together. Rather, it was

a fairly straightforward drug possession case. Indeed, the drug analysis was completed within a month of appellant's arrest. Under these facts, we find that a delay of 15½ months is sufficiently long to trigger the *Barker* analysis.[3]

**REASON FOR DELAY**

The next factor we look at is the reason for the delay. At trial and on appeal, appellant alleges neither bad faith nor official negligence. In his brief, appellant does argue that this factor should be weighed against the State because they provided no reason for the delay. The State responds that while they were ready to try the case, it was delayed because of ongoing plea negotiation, discovery discussions, appellant's desire for a polygraph, and the general overcrowding of the Navarro County courts.

On the issue of the reason for the delay, the state bears the burden of justification. The State's argument that the delay was caused by ongoing plea negotiations, discovery discussions, and appellant's desire for a polygraph is fully supported by the record. Delays caused by good faith plea negotiations are legitimate and will not be counted against the State. *State v. Munoz*, 991 S.W.2d 818, 824 (Tex. Crim. App. 1999). Additionally, there is no allegation or evidence that the delay was the result of bad

---

[3] Appellant cites *State v. Rangel*, 980 S.W.2d 840, 833 (Tex App.—San Antonio 1998, no pet.) for the proposition that "a delay beyond eight months" triggers a speedy trial analysis. An inflexible "eight month rule" to be applied in all cases may be a fair reading of *Rangel*. However, in *Barker*, a case which affirmed a conviction where there was a five year delay, the Supreme Court noted, "[B]ecause of the imprecision of the right to a speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972). The Court of Criminal Appeals has not adopted an "eight month rule" but has rather specifically stated, "There is no set time element that triggers the *[Barker]* analysis." *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). In finding that the 15½ month delay triggers the *Barker* analysis we are following *Barker* and *Cantu*. We are not adopting a "15½ month rule." Our holding is only that on the *facts of this particular case* (no delays because of scientific testing, co-defendant issues, or other complicating factors), this 15½ month delay does trigger the *Barker* analysis.

faith, intentional action by the State, or official negligence. The State has met its burden on this factor. While this alone should probably be dispositive of appellant's issue, *Barker* and subsequent cases mandate that courts consider all four factors; so we will continue our analysis. *See id*. at 825*.

**ASSERTION OF RIGHT**

We next analyze appellant's assertion of his right to a speedy trial. While represented by counsel, appellant filed two handwritten, *pro se* motions which on appeal he argues asserted his right to a speedy trial. Neither has a certificate of service. Both were filed before appellant requested to represent himself and before the court allowed appellant to proceed as hybrid co-counsel. The State contends it was unaware of the motions when they were filed. It was dealing with appellant's attorney, the written motions he had filed, plea negotiations, and discovery.

The first *pro se* motion, filed by appellant on September 11, 2008, is a three-page, handwritten document styled "Motion to be Heard on Due Process of Law." The motion requests a hearing to show due process and cruel and unusual punishment violations. Essentially, both his motion and cases cited deal with search and seizure questions and alleged *Brady* violations. He does complain about his pre-trial setting being "put off" but he does so in the context of his desire for a hearing on the search and *Brady* issues. Nowhere in his motion is the term "speedy trial" used. None of the three cases cited in the motion are speedy trial cases.

On January 26, 2009, appellant filed a handwritten, three-page motion styled "Motion for Speedy Trial and Disposition." Unlike his earlier motion, this motion does

use the term "speedy trial" and cites a speedy trial case. The motion does not, except in its style, request a speedy trial. It only asks for a dismissal because he was not afforded a speedy trial.

Appellant and his attorney were before the court for hearing on February 9th, March 10th and March 25th. At none of these hearings did he raise the speedy trial issue or even ask for a trial date. He did present his speedy trial motion to the court at the hearing on May 19th.

The burden on this issue is on the appellant to show he asserted his right and was persistent in his request. *See Munoz*, 991 S.W.2d at 825. The record shows that the trial court was first apprised of his request at the May 19, 2009, hearing. By that time, the trial date on June 8, 2009, was set. The trial court immediately took action to make sure appellant's case would be tried on the June 8th setting. There is nothing in the record to suggest that had appellant asserted his right to a speedy trial at any of the earlier hearings, the trial court would not have reacted similarly and made sure a trial was held within the next few weeks. Certainly the trial court would be justified in finding that had appellant asserted his right, a trial would have been held months earlier.

We find that appellant did raise the speedy trial issue in his motion and at the hearing. We also find that he failed to bring the motion to the court's attention or even ask for a trial setting at three hearings subsequent to filing his motion. Finally, we find that he was only seeking a dismissal of the charges against him instead of an actual

speedy trial.[4]

On this issue, we conclude that appellant failed to assert the right in any meaningful way until just a few weeks before the trial. But, because he did assert it, we will weigh it against the State. However, because he failed to bring it to the court's attention despite numerous opportunities to do so, we weigh it against the State only in the weakest possible way.

**PREJUDICE BY DELAY**

Next, we come to "prejudice" which is the final *Barker* factor. Appellant argues that he was subject to pre-trial incarceration, suffered general anxiety, lost his job, and his efforts at doing legal research were hampered.[5] Based upon the record, he clearly was subject to these effects of pre-trial incarceration.

However, the crux of appellant's prejudice argument is that the pre-trial delay caused him to be unable to locate a material witness, Officer Sylvia Garcia.

In showing prejudice based upon a missing witness, the accused must show three things: 1) the witness was unavailable at trial, 2) the witness' testimony would have been relevant and material and 3) the defendant exercised due diligence in attempting to locate the witness. *Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982).

---

[4] Seeking a dismissal, rather than a trial date, is a factor which weakens an accused's claim that he was deprived his constitutionally protected right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008) ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy trial claim because it shows a desire to have no trial instead of a speedy one.").

[5] The record indicates that appellant was given special access to the law materials in the jail library because he was serving as his own attorney. When his cell was put on lockdown for a rules violation, he was offered his own cell with access to his legal materials. He declined the offer.

Officer Garcia did not testify at trial. At the motion for new trial, it became apparent that she had left the police department, moved from the area, and was not readily findable. Although appellant argues Garcia was the "lead officer" in the case, she clearly was not. Officer Chamblee was. Garcia was supervising Chamblee that night and acted in a secondary role. She was also not involved in key aspects of the events, including when Chamblee found the drugs and searched the vehicle after his previous prisoner. The record also reflects that the appellant failed to make any effort to locate the witness. Appellant did not subpoena her, did not look for her, and did not request an investigator to look for her.

Although appellant was incarcerated and undoubtedly suffered some effects from that, he has failed to show that the delay in his case coming to trial caused him not to be able to call a witness. Appellant has simply failed to show prejudice that would justify dismissing the case.

Looking at all four *Barker* factors, we find the 15½ months delay was sufficient to trigger our analysis. We also find that the reason for the delay should not count against the State, that appellant's assertion of the right was minimal, and that he has failed to show that he was prejudiced by the pre-trial delay. The trial court properly denied his request that the case be dismissed. Appellant's eighth issue is overruled.

**CONCLUSION**

Having overruled all of appellant's issues, the judgment of the trial court is affirmed.


                                        KEN ANDERSON
                                        Judge

Before Chief Justice Gray,
        Justice Scoggins, and
        Judge Anderson[6]
Affirmed
Opinion delivered and filed August 24, 2011
Publish
[CRPM]

---

[6] Ken Anderson, Judge of the 277th District Court of Williamson County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2005).