

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-16-00288-CR

THOMAS WAYNE LESTER                                          APPELLANT

V.

THE STATE OF TEXAS                                                STATE

————

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1366479D

————

## MEMORANDUM OPINION[1]

————

### I.   INTRODUCTION

A jury convicted Appellant Thomas Wayne Lester of possessing 4 or more but less than 200 grams of the controlled substance methamphetamine, and upon finding the habitual-offender allegation true, the trial court sentenced him to thirty-five years' confinement.  *See* Tex. Health & Safety Code Ann. § 481.102(6)

---

[1]*See* Tex. R. App. P. 47.4.

(West Supp. 2017), § 481.115(a), (d) (West 2017); Tex. Penal Code Ann. § 12.42(d) (West Supp. 2017). Appellant brings two issues on appeal. First, he contends that the evidence is insufficient to support his conviction. Second, he contends that the trial court abused its discretion during the punishment phase by admitting State's Exhibit No. 12, a penitentiary packet (pen packet), over his objection. Because (1) the evidence viewed in the light most favorable to the verdict amply supports a rational juror's finding that Appellant knowingly possessed the methamphetamine in question beyond a reasonable doubt and (2) the trial court was well within its discretion to admit State's Exhibit No. 12 into evidence during the punishment phase, we overrule both of Appellant's issues and affirm the trial court's judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

At around 1:30 a.m. on April 12, 2014, Appellant and a passenger were riding a motorcycle when Arlington Police Officer Dalton Rosenbaum pulled them over. Officer Rosenbaum ordered Appellant and his passenger to sit on the curb, where Appellant admitted that he was driving without a license. Appellant, who said he was making payments to another person for the motorcycle, consented to a search of it. The search revealed a digital scale, a cooking spoon, and numerous empty baggies. Around 2:12 a.m., Appellant's passenger was released, and the officers searched Appellant before arresting him for driving with a suspended license. During this search, the police discovered that Appellant was wearing multiple layers of pants or shorts but only one T-shirt.

2

As Officer Rosenbaum led Appellant to the police cruiser, Sergeant James Swoope, who was also on the scene, followed from behind. Along the path that Appellant had just walked, Sergeant Swoope saw a baggie filled with a crystalline substance he believed to be methamphetamine (the ground baggie). This baggie was not on the ground before Appellant walked to the car. As Appellant lifted his leg to climb into the police cruiser, Officer Rosenbaum saw a second baggie containing a crystalline substance fall out of Appellant's pants leg (the pants baggie). The pants baggie also contained five other baggies of a crystalline substance. At the time of the stop, Appellant was carrying $434.00 in cash.

The police did not label any of the seven baggies containing the crystalline substance, and the crystalline substance from only one of the seven baggies was tested. Nichole Huddleston, chemist, forensic scientist, and technical team leader for National Medical Services, testified that she labelled the seven baggies A through G, weighed their contents, and tested the contents of baggie A. Baggie A contained 6.76 grams of methamphetamine. Officer Rosenbaum testified that the ground baggie was "either the one labeled A or B" and "was the one with the larger quantity inside of it." Based on the record, it is undeterminable whether baggie A was the ground baggie, the pants baggie, or one of the five baggies found in the pants baggie. The total weight of the apparent methamphetamine found in all seven baggies was 17.78 grams.

3

### III. SUFFICIENCY OF THE EVIDENCE

Under these facts, "a person commits an offense if the person knowingly or intentionally possesses" methamphetamine in the charged amount. *See* Tex. Health & Safety Code Ann. §§ 481.102(6), 481.115(a), (d). To possess means to have "actual care, custody, control, or management" of the drugs. *Id.* § 481.002(38) (West 2017). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." Tex. Penal Code Ann. § 6.03(b) (West 2011).

In his first issue, Appellant contends that whether the tested baggie, Baggie A, was the ground baggie, the pants baggie, or one of the baggies inside the pants baggie, the evidence is insufficient to support his conviction. Specifically, he argues that (1) the evidence is insufficient to prove that he exercised care, custody, control, or management over the ground baggie; (2) the evidence is insufficient to show that he knew he physically possessed the pants baggie or the baggies it contained; and (3) the evidence is insufficient to show that he knew the substance he possessed was methamphetamine.

### A. We Review the Evidence in the Light Most Favorable to the Verdict.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

4

307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State,* 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49; see *Blea*, 483 S.W.3d at 33.

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins*, 493 S.W.3d at 599.

In determining the sufficiency of the evidence to show a defendant's intent, and faced with a record that supports conflicting inferences, we "must presume—

5

even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

**B.    The Evidence Sufficiently Supports a Jury Finding that Appellant Exclusively Possessed the Pants Baggie and the Baggies It Contained.**

Because the pants baggie and five other baggies of the crystalline substance dropped out of clothing Appellant was wearing while Officer Rosenbaum watched, the evidence is sufficient to support the finding that Appellant exercised exclusive control, management, or care of those six baggies. *See Yates v. State*, No. 02-14-00516-CR, 2015 WL 4154168, at *2 (Tex. App.—Fort Worth July 9, 2015, no pet.) (mem. op., not designated for publication); *cf. Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (explaining that more analysis is required in evidentiary sufficiency review when the "accused is *not in exclusive possession* of the place where the [controlled] substance is found") (emphasis added).

**C.    A Defendant Can Be Guilty of Intentionally or Knowingly Possessing Illegal Drugs Without Having Exclusive, Physical Possession.**

That Appellant was not in exclusive possession of the ground baggie when the police discovered it does not preclude his conviction for possession of methamphetamine.

**1.    Sufficient Links Can Support an Inference of Possession.**

When proving a defendant's connection to illegal drugs not in his exclusive

6

possession, the State must rely on additional independent facts and circumstances to link the defendant to the drugs. *Poindexter*, 153 S.W.3d at 406; *see also Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). The State need only establish "affirmative links between the defendant and the drugs such that he, too, knew of the drugs and constructively possessed them." *Poindexter*, 153 S.W.3d at 412. These "links" are designed to protect innocent people from conviction just because they accidentally stumbled upon someone else's drugs. *Id.* at 406.

In *Evans v. State*, the Texas Court of Criminal Appeals provided a non-exclusive list of factors that tend to establish a link between a defendant and a given quantity of illegal drugs. 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). This list includes:

(1)     the defendant's presence when a search is conducted;

(2)     whether the contraband was in plain view;

(3)     the defendant's proximity to and the accessibility of the narcotic;

(4)     whether the defendant was under the influence of narcotics when arrested;

(5)     whether the defendant possessed other contraband or narcotics when arrested;

(6)     whether the defendant made incriminating statements when arrested;

(7)     whether the defendant attempted to flee;

(8)     whether the defendant made furtive gestures;

(9)     whether there was an odor of contraband;

(10)   whether other contraband or drug paraphernalia were present;

(11)   whether the defendant owned or had the right to possess the place where the drugs were found;

(12)   whether the place where the drugs were found was enclosed;

(13)   whether the defendant was found with a large amount of cash; and

(14)   whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* It is pertinent to note, however, that "[t]hese are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession.' They are not a litmus test." *Id.*

Importantly, we only "consider links (well) supported by the record." *Dominguez v. State*, 474 S.W.3d 688, 695 (Tex. App.—Eastland 2013, no pet.) (citing *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("The absence of various links does not constitute evidence of innocence to be weighed against the links present.")). The number of factors present is not as significant as the "logical force" each factor bears in linking the accused to the drugs. *See Evans*, 202 S.W.3d at 162 n.12, 166; *Hurtado v. State*, 881 S.W.2d 738, 743 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

**2.    In Scenarios Analogous to the Facts Presented Here, Courts Have Held Evidence Sufficient to Support Possession.**

Texas caselaw has thoroughly addressed instances where drugs appear after a defendant passes through or occupies an area. For instance, analogous to the facts at hand are cases in which an officer finds drugs in the back of a previously-searched police car. *See, e.g., Williams v. State*, 784 S.W.2d 428,

8

429–30 (Tex. Crim. App. 1990) (holding evidence was sufficient to support finding that defendant possessed cocaine found in the back of a patrol car after his arrest, considering that officers checked the back of the car before their shift, defendant was the first occupant of the back seat during the shift, and he was fidgeting while being transported to the police station); *Gullatt v. State*, 368 S.W.3d 559, 564 (Tex. App.—Waco 2011, pet. ref'd) ("The jury heard the evidence and could rationally have concluded [defendant] placed the methamphetamine in the back of Officer Chamblee's patrol car.").

It is easy enough to see how such precedent could apply outside of instances involving police cruisers, and other courts have held as much. *See, e.g.*, *Hall v. State*, No. 13-11-00102-CR, 2012 WL 1573019, at *5 (Tex. App.—Corpus Christi May 3, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that an inference that defendant dropped cocaine was supported by evidence showing that (1) nothing was on the ground when defendant exited his pickup, (2) after he was placed in a police car, a bag was found where he had been standing, and (3) he initially resisted being moved away from that location); *Raleigh v. State*, 740 S.W.2d 25, 27–28 (Tex. App.—Houston [14th Dist.] 1987, no pet.) (holding defendant was sufficiently linked to heroin when an officer saw him throw something, the officer later recovered heroin from the area where the object was thrown, the area contained no other objects, and no other person walked by who could have placed the heroin in the area); *see also, e.g.*, *Hughes v. State*, 64 N.E.3d 1268, 2016 WL 5934200, at *2 (Ind. Ct. App. Oct. 12, 2016)

9

(mem. decision, not designated for publication) (holding defendant was sufficiently linked to cocaine when a chair was determined to be drug-free before the defendant's personal items were placed in it and cocaine was found in the chair after said items were removed), *transfer denied*, 76 N.E.3d 142 (Ind. 2017); *State v. Kirts*, 43,905-KA (La. App. 2 Cir. 2/25/09); 2009 WL 456409, at *3 (not designated for publication) (holding cocaine was sufficiently linked to defendant when an officer and defendant fought and cocaine was found within two feet of the defendant where there had been none previously), *writ denied*, 2009-KO-1111 (La. 1/22/10); 25 So. 3d 130.

## D. The Evidence Sufficiently Supports a Jury Finding that Appellant Possessed the Ground Baggie.

Appellant presents several arguments as to why he cannot be connected to the ground baggie beyond a reasonable doubt. *First*, he argues that there is no way to establish beyond a reasonable doubt that the ground baggie could be connected to him because he did not actually possess it. The jury was entitled (1) to believe the officers' testimony that the area was clear of any baggies prior to Appellant passing through and that no other people were present who may have deposited the ground baggie and (2) to then infer that Appellant had dropped it. *See Blea*, 483 S.W.3d at 33; *Murray*, 457 S.W.3d at 448–49; *Williams*, 784 S.W.2d at 429–30. *Second*, Appellant argues that the ground baggie must have blown in at the last second from some other location. Again, the jury was entitled to believe the officers' testimony. *See Blea*, 483 S.W.3d at

10

33; *Murray*, 457 S.W.3d at 448–49. Specifically, given the evidence, the jury was entitled to believe that the area was well-lit and unoccupied by other persons and that it was windy enough that the ground baggie would have blown away if it had been on the path for any significant period before Appellant's short walk from the curb to the patrol car. As in *Hall*, the evidence here indicates that nothing was on the ground between the curb and patrol car prior to Appellant walking through; after Appellant reached the car, Sergeant Swoope found the ground baggie where Appellant had walked. The jury was within its rights to affirmatively link the ground baggie to Appellant and to infer that no intervening source possessed it. *See Blea*, 483 S.W.3d at 33; *Murray*, 457 S.W.3d at 448–49; *Hall*, 2012 WL 1573019, at *5.

The factors discussed in *Evans* further tie Appellant to the ground baggie: (1) the possession of other narcotics—the pants baggie and the baggies it contained, all holding crystalline substances—which fell out of Appellant's pants in front of Officer Rosenbaum (factors 3, 5, and 12); (2) the matching empty baggies found in the motorcycle Appellant drove (factors 10 and 11); (3) his possession of a scale and cooking spoon by virtue of his being the driver of the motorcycle as well as his "making payments" on it (factors 10 and 11); (4) the large amount of cash he carried (factor 13); and (5) his wearing multiple layers of pants or shorts with only a single T-shirt (factors 12 and 14). The jury appropriately considered all these factors when it determined that Appellant was

11

affirmatively linked to the methamphetamine. *See Evans*, 202 S.W.3d at 162 n.12.

In sum, ample evidence supports the jury's finding beyond a reasonable doubt that Appellant exercised actual care, custody, control, or management over the ground baggie.

**E.      The Evidence Also Sufficiently Supports the Jury Finding that Appellant Knowingly Possessed the Methamphetamine.**

Beyond his arguments challenging the possession evidence, Appellant also contends that even if Baggie A was one of the baggies that fell out of his pants, there is no evidence that he knew he had physical possession of those baggies, and regardless, there is no evidence that he knew the substance in any of the seven baggies was methamphetamine. *First*, as for the baggies that fell from his pants, Appellant's mental state was a fact issue for the jury to determine; Officer Rosenbaum's seeing the baggies fall from Appellant's pants, taken alone, is enough evidence from which the jury could infer that Appellant knowingly possessed them. S*ee, e.g.*, *Frazier v. State*, 480 S.W.2d 375, 381 (Tex. Crim. App. 1972) (holding evidence sufficient to support knowing possession when contraband found in defendant's coat pocket); *Yates*, 2015 WL 4154168, at *2.

*Second*, regarding all seven baggies, evidence linking a defendant to the controlled substance is also proof of knowing possession. *Brown*, 911 S.W.2d at 747; *Santiesteban-Pileta v. State*, 421 S.W.3d 9, 12 (Tex. App.—Waco 2013, pet. ref'd). Thus, all the evidence discussed above that sufficiently links

12

Appellant to the ground baggie for the possession element also sufficiently proves the "knowing" element for all seven baggies. *Third*, numerous cases have relied on the visibility of the substance in assessing its possessor's knowledge. *See Yates*, 2015 WL 4154168, at *3 (cataloging cases). Here, crystalline rocks in all seven baggies are visible to the naked eye. For all these reasons, we hold that the evidence sufficiently supports the jury finding that Appellant knowingly possessed the methamphetamine.

## F. The Evidence Is Sufficient to Support the Jury Verdict.

Having held that the evidence sufficiently supports both the "knowing" element and the possession element, we hold that regardless of which of the seven baggies was tested for methamphetamine, the evidence supports the jury verdict beyond a reasonable doubt, and we overrule Appellant's first issue.

## IV. THE PEN PACKET

In his second issue, Appellant contends that the trial court abused its discretion by admitting during the punishment phase State's Exhibit No. 12, a pen packet purportedly of one of Appellant's prior convictions relied on in the habitual-offender allegation.

## A. We Review the Trial Court's Admission of the Pen Packet During the Punishment Phase for an Abuse of Discretion.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

13

**B. Prior Convictions Must Be Sufficiently Linked to a Defendant.**

To prove that a defendant was convicted of an enhancement offense, the State must (1) prove the existence of the conviction described in the enhancement allegation and (2) link that conviction to the defendant. *Davis v. State*, 268 S.W.3d 683, 715 (Tex. App.—Fort Worth 2008, pet. ref'd); *see Beck v. State*, 719 S.W.2d 205, 209–10 (Tex. Crim. App. 1986). The State may prove a defendant's previous conviction by introducing certified copies of a judgment and sentence (a pen packet). *Beck*, 719 S.W.2d at 209; *Davis*, 268 S.W.3d at 715. However, the State must offer independent evidence linking the pen packet to the defendant on trial. *Beck*, 719 S.W.2d at 210; *Davis*, 268 S.W.3d at 715. A trial court abuses its discretion by admitting a pen packet absent evidence that the person convicted of the offense charged in the pen packet is the accused. *Beck*, 719 S.W.2d at 210; *Davis*, 268 S.W.3d at 715.

**C. The Trial Court Did Not Abuse Its Discretion by Admitting the Pen Packet During the Punishment Phase.**

State's Exhibit No. 12 does not contain a set of fingerprints or a photograph of the person convicted therein. Other indicia of a common identity between that person and Appellant, however, do exist. The two men have:

- Identical first, middle, and last names;

- Identical birthdates; and

- Identical County Identification (CID) Numbers.

14

They are also of the same race and gender and listed the same city and state as their residence.

Appellant contends that the trial court abused its discretion by admitting the pen packet because no evidence proved identity; that is, no evidence proved that Appellant was the same person as the Thomas Wayne Lester named in the pen packet. Our precedent clearly supports the opposite contention.

*First*, the identical full names and dates of birth are specific enough to support the conclusion that the pen packet refers to Appellant. *See, e.g.*, *Ajak v. State*, No. 07-14-00018-CR, 2014 WL 3002811, at *2 (Tex. App.—Amarillo July 1, 2014, no pet.) (mem. op., not designated for publication) (concluding that a pen packet fingerprint card was sufficiently linked to the defendant when the fingerprint card had the "same rather unique name, Mabil Ajak[,]" and the same date of birth, as the defendant), *abrogated on other grounds by Ex parte Pue*, No. WR-85,447-01, 2018 WL 1109471, at *2, *4 & n.21 (Tex. Crim. App. Feb. 28, 2018). *Second*, our precedent is replete with cases holding that matching CID numbers strongly support linking defendants with associated prior convictions. *See Davis v. State*, No. 02-16-00102-CR, 2017 WL 370953, at *1 (Tex. App.—Fort Worth Jan. 26, 2017, no pet.) (mem. op., not designated for publication); *Ramirez v. State*, No. 02-13-00540-CR, 2015 WL 4652771, at *8 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that defendant's identity in prior convictions was shown through evidence of a common CID number in other documents with matching

15

fingerprints); *Sullens v. State*, No. 02-13-00364-CR, 2015 WL 3523143, at *3 (Tex. App.—Fort Worth June 4, 2015, pet. ref'd) (mem. op., not designated for publication) (holding where name, date of birth, and CID number appear in non-challenged exhibits of prior convictions, their repetition in challenged exhibits of prior convictions satisfies the State's duty to link a defendant to a challenged prior conviction); *Jones v. State*, No. 02-11-00060-CR, 2012 WL 3735890, at *2 (Tex. App.—Fort Worth Aug. 30, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that evidence was sufficient to establish defendant's identity in challenged exhibit of prior conviction where it and unchallenged exhibit shared identical CID number and date of birth); *Norris v. State*, No. 02-10-00468-CR, 2012 WL 2135594, at *3 (Tex. App.—Fort Worth June 14, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that evidence of identical CID number, date of birth, and full name was sufficient to link defendant to prior convictions). *Third*, another admitted pen packet, State's Exhibit No. 10, unchallenged by Appellant at trial or on appeal, connects the challenged pen packet—State's Exhibit No. 12—to Appellant. A witness at trial in the case before us matched the fingerprints in State's Exhibit No. 10 to Appellant. Significantly, in State's Exhibit No. 10, the offense at issue in the challenged State's Exhibit No. 12—burglary of a building in trial court cause number 0270357W—was likewise the subject of a habitual allegation. Appellant pled true to that habitual offender allegation in the trial proceedings for the offense depicted in the State's Exhibit No. 10 pen packet. This is therefore additional

16

evidence indirectly linking State's Exhibit No. 12 to Appellant. *See Alberty v. State*, 528 S.W.3d 702, 707 (Tex. App.—Texarkana 2017, no pet.) (noting that unobjected-to documents in one exhibit tied the defendant to the challenged prior judgment of conviction).

For all the above reasons, we hold that the trial court did not abuse its discretion by admitting State's Exhibit No. 12 and considering it in determining Appellant's sentence. Consequently, we overrule Appellant's second issue.

## V.     CONCLUSION

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

/s/ Mark T. Pittman
MARK T. PITTMAN
JUSTICE

PANEL:  WALKER, PITTMAN, and BIRDWELL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 9, 2018

17