# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00437-CR

---

**Sean Patrick Nelson, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 27TH DISTRICT COURT OF LAMPASAS COUNTY
NO. 9848, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Sean Patrick Nelson was convicted by a jury of possession of a controlled substance, in an amount of four grams or more but less than 200 grams, with intent to deliver and of evading arrest or detention using a vehicle. He was sentenced by the trial court to ten years' confinement on each count, with the sentences to run concurrently. *See* Tex. Penal Code § 38.04; Tex. Health & Safety Code § 481.112. In four issues, he contends that the evidence was insufficient to support his conviction for possession of a controlled substance with intent to deliver, the trial court erred in submitting a jury instruction on the law of parties, and the jury charge erroneously allowed the jury to apply the law-of-parties instruction to the count alleging evading arrest or detention with a vehicle. We will affirm the judgments of conviction.

# BACKGROUND

In the early morning of January 23, 2017, Lampasas County Sheriff's Office (LCSO) Patrol Deputy Justin Wilson attempted a traffic stop of a white S10 pickup truck with a defective high-mounted brake light. Deputy Wilson testified that as he approached the truck, he activated his emergency lights; when the truck failed to stop, he turned on his siren. He followed the truck for several miles, during which it reached a speed of 100 m.p.h. and drove at times on the wrong side of the road. There were no other vehicles on the road during the pursuit.

Deputy Wilson contacted other officers to assist because he did not know why the truck was "running." The chase ended on a private dirt driveway in Bell County. As the truck slowed, the driver jumped from it and leapt a nearby fence. The truck, still in motion, crashed through a gate and came to rest against a cedar tree. Deputy Wilson decided not to pursue the driver because he had "too much of a jump on" him, and Deputy Wilson was concerned that there might be a passenger in the truck.

The truck contained a single passenger, later identified as Joshua Hill,[1] who appeared to be "under the influence of something"; his responses to Deputy Wilson's questioning "didn't make any sense." Hill was transported by EMS to a hospital because Deputy Wilson was "concerned about hi[s] possibly having taken enough drugs to overdose."

Deputy Wilson searched the truck and recovered two cell phones from the front seat. Although he was initially unable to identify the fleeing driver, Deputy Wilson observed that he had a tattoo on his left calf and was wearing black shorts and a black jacket with an emblem of a round, white-outlined, black cross on the back. Deputy Wilson testified on cross-examination that, after reviewing video from his dashboard camera, which was admitted

---

[1] Hill, Nelson's codefendant, was tried separately and did not testify at Nelson's trial.

into evidence at trial, he was able to identify the driver as Nelson: "When the driver was jumping over the fence, when he peeked over his shoulder like that (indicating), I could see his side profile. And I've come in contact with Mr. Nelson before, and just through his side profile, I knew it was him."[2]

Officers ran the truck's "temporary tags" and learned that it was registered to Leslie Adam Rollins, who was known to them. Rollins was initially suspected to be the driver, but Deputy Wilson believed that Rollins—who is "probably 40 something" and weighs over 200 pounds—would have been unable to jump the fence.

Methamphetamine was subsequently discovered "pretty close to . . . where the truck came to a rest," "[s]ome 10 feet or so from the truck." Deputy Wilson testified that he did not see the driver throw it and would have seen if the driver had thrown anything out of the truck or "made a throwing motion." He was "pretty sure" that the driver's window was either "open" or had "busted out" when the truck crashed; he could not remember whether the passenger's window was up or down. His opinion was that Hill had thrown the drugs out of the truck, based on where they were found, the angles Deputy Wilson looked at, and the fact that the driver's window was open.

LCSO Deputy Sheriff Jerome Ervin arrived on scene following the chase and helped to search for the driver after officers received a call of a suspicious person hiding in a nearby backyard. Sheriff Ervin testified that while searching, he located a black jacket with what

---

[2] Deputy Wilson acknowledged that he had not previously claimed to have recognized Nelson as the driver after reviewing the video.

appeared to be fresh blood on it. He was also notified that a Bell County[3] deputy had found two baggies containing methamphetamine, and Sheriff Ervin picked up, bagged, and labeled the drugs. He did not participate in the search of the truck's interior.

LCSO Investigator Matt Barnes testified that he met with Rollins, whom he had encountered "on many other occasions" while on patrol, as part of the investigation and described him as "about six-five, six-six, about 270 pounds, red hair with about a four-inch-long beard." Investigator Barnes had reviewed Deputy Wilson's dash-cam video and did not believe Rollins was the truck's driver.

Investigator Barnes testified that on the morning of January 24, 2017, Rollins' employee, Dennis Waldrop, called him and asked where the truck was. When Investigator Barnes replied that the truck was not Waldrop's, Waldrop explained that Rollins had registered and insured the truck for him because Waldrop did not have a valid driver's license. Waldrop gave Rollins' phone number to Investigator Barnes, and Rollins corroborated Waldrop's account, explaining that he had provided the truck to Waldrop to drive back and forth from job sites. Waldrop told Investigator Barnes that he had loaned the truck to Nelson around 7 p.m. on January 22, 2017, to install a radio. Waldrop, whom Investigator Barnes had not been able to contact or serve with a subpoena, was "in the winds"[4] at the time of the trial.

Investigator Barnes testified that he obtained a search warrant for the contents of the two phones found on the truck's front seat. He ran the number of one of the phones through several databases, and it "c[a]me back" to a woman who said that it belonged to her son,

---

[3] Deputy Wilson's pursuit of Nelson began in Lampasas County and ended in Bell County.

[4] "If someone is in the wind, they are missing, especially after escaping." *In the wind*, Cambridge Dictionary, available at https://dictionary.cambridge.org/dictionary/english/in-the-wind (last visited June 2, 2022).

Joshua Hill. Hill had also listed the number when he checked into the hospital. Investigator Barnes discovered several calls and messages between Hill's phone and the other, which he believed to be Nelson's. The phone number for the second phone was listed in Hill's phone under the contact "NS." Investigator Barnes testified that Nelson was known by the "street name . . . Nazi Sean." The last call between the two phones was placed at 10:12 p.m. on January 22, 2017, the night before the chase. A technician recovered several photos and files from the second phone, including selfies of Nelson and his girlfriend, as well as photos of Nelson's known associates. Investigator Barnes testified that "based on that, this would be Mr. Nelson's phone."

Investigator Barnes also testified that he obtained a search warrant for Nelson's DNA, which was matched to the blood found on the jacket. After Nelson's arrest, Investigator Barnes examined him for tattoos and observed a "large tattoo on the back of his left calf," which "could be seen on [Deputy Wilson's] dash[-]cam video." Investigator Barnes testified that he believed the individual fleeing the truck was Nelson because:

> the tattoo that was shown on the video, the tattoo that's on the back of his leg, his DNA was found on the jacket within three blocks, two blocks of the place where it crashed. The person who owned the truck said, ["]I loaned it to him.["] The person who the truck was registered to I played the video for, and he identified Mr. Sean Nelson as the one that jumped from that vehicle.

Investigator Barnes testified that a gram of methamphetamine sells for approximately $20, with larger quantities selling at a discounted rate. He added that, assuming this premium, an ounce of methamphetamine would sell for approximately $1,000. He also testified that texts found on Nelson's phone, both sent and received, were consistent with the buying and selling of narcotics. The most recent, received on January 11, 2017, read, "What

5

could get me a 20, brother?" Investigator Barnes explained that in his experience, this was a "reference to narcotics"; the sender was "asking for $20 worth of dope."

Brian Kivlighn, a forensic scientist with the DPS crime laboratory in Waco, testified that both baggies collected by Sheriff Ervin contained methamphetamine. The first contained 33.33 grams, or more than an ounce, and the second 27.69 grams, or less than one ounce.[5]

Serena Zboril, also a forensic scientist at the Waco laboratory, testified about the DNA testing of the blood stain found on the jacket recovered by Sheriff Ervin. She developed a DNA profile from the stain and entered it into a database, which returned Nelson as "a potential suspect as far as a contributor of the DNA stain." She compared the buccal swab collected from Nelson to the DNA profile obtained from the stain and determined that Nelson's profile was consistent with the sample collected from the jacket. The likelihood ratio, "which would tell you how much more likely that DNA profile is that . . . it came from Sean Patrick Nelson than if it came from another unrelated unknown individual," was 3.06 quintillion, meaning "getting that DNA profile is 3.06 quintillion times more likely if the DNA came from Sean Patrick Nelson than if it came from another unknown, unrelated individual."

During the charge conference, defense counsel objected to the inclusion of an instruction on the law of parties in the abstract portion of the jury charge, as well as a paragraph allowing the jury to convict Nelson, either directly or as a party, of the lesser-included offense of possession of a controlled substance. The trial court overruled both objections.

The jury found Nelson guilty of possession of a controlled substance with intent to deliver and of evading arrest or detention using a vehicle. Following a hearing on punishment,

---

[5] Kivlighn testified that there are 28.4 grams in an ounce.

6

the trial court sentenced him to 10 years' confinement for each count, with the sentences to run concurrently.[6] The court declined to find that the vehicle driven by Nelson was a deadly weapon with respect to the second count.

## DISCUSSION

In four issues, Nelson contends that: (1) the evidence presented at trial is insufficient to link him to the methamphetamine recovered near the truck; (2) the evidence is insufficient to show "an intent to deliver or sell any controlled substance under a direct culpability theory or under the law of parties"; (3) the trial court erred by submitting a jury instruction on the law of parties "which permitted Nelson's conviction as a party to possession with intent to deliver"; and (4) "[t]he trial court's jury instruction[] on the law of parties erroneously allowed the jury to consider that instruction and apply it to Nelson's felony evasion-by-vehicle charge (Count Two) when the instruction was meant to apply only to the possession-with-intent-to-deliver charge."

### Sufficiency of the Evidence

In his first two issues, Nelson contends that the evidence was insufficient to prove that he possessed or intended to deliver methamphetamine, whether directly or as a party.

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to

_____

[6] At the sentencing hearing, Nelson also entered an open guilty plea to a charge of failure to appear and was sentenced by the trial court. Nelson's conviction and sentence in that case are not relevant to our analysis here.

7

determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *see Musacchio v. United States*, 577 U.S. 237, 243 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))). When, as in this case, the charge authorizes the jury to convict the defendant on more than one theory, the verdict of guilt will be upheld if the evidence is sufficient on any theory authorized by the jury charge. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is

8

the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo*, 559 S.W.3d at 487; *see Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we must defer to the credibility and weight determinations of the factfinder. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 577 U.S. at 243 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487. The jury is not allowed, however, to make conclusions based on speculation, which, unlike reasonable inferences, are "insufficiently based on the evidence to support a finding beyond a reasonable doubt." *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *see Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented.").

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim.

9

App. 2013) (citing *Hooper*, 214 S.W.3d at 13); *see Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin*, 473 S.W.3d at 317.

Under the Texas Health and Safety Code, an individual commits an offense if he or she "knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1," including methamphetamine, in an amount of 4 grams or more but less than 200 grams. Tex. Health & Safety Code §§ 481.102(6), .112(a), (d). "Possession" means "actual care, custody, control, or management." *Id.* § 481.002(38). "The elements for possession of a controlled substance with intent to deliver are that the defendant: (1) possessed a controlled substance in the amount alleged; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance." *Figueroa v. State*, 250 S.W.3d 490, 500 (Tex. App.—Austin 2008, pet. ref'd).

To prove possession of a controlled substance as a party, "the State must show (1) that another person possessed the contraband and (2) that the defendant, with the intent that the offense be committed, solicited, encouraged, directed, aided, or attempted to aid the other's possession." *Robinson v. State*, 174 S.W.3d 320, 324–25 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); *see Woods v. State*, 998 S.W.2d 633, 636 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Participation in a criminal offense may be inferred from the circumstances. *See Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987). "While an agreement of the parties to act together in common design can seldom be proven by direct evidence, the State can rely on the actions and words of the parties showing, by either direct or circumstantial evidence, an understanding and common design to do a certain act." *Gant v. State*, 116 S.W.3d 124, 133 (Tex. App.—Tyler 2003, pet. ref'd).

10

Moreover, "[i]t is well settled . . . that an accused may with another or others jointly possess dangerous drugs or narcotics and that such possession need not be exclusive." *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). We have explained the requirements for proving possession of contraband when the accused is not in exclusive possession or control of the place where the contraband is found:

> When an accused is not in exclusive possession and control of the place where the contraband is found, it cannot be concluded or presumed that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances connecting or linking the accused to the knowing possession of contraband . . . . Similarly, when the contraband is not found on the accused's person or it is not in the exclusive possession of the accused, additional independent facts and circumstances must link the accused to the knowing possession of the contraband.

*Allen v. State*, 249 S.W.3d 680, 690–91 (Tex. App.—Austin 2008, no pet.); *see McGoldrick*, 682 S.W.2d at 578 (concluding "facts and circumstances may be sufficient to show an accused and others acted together in possessing a narcotic drug, but there must be some affirmative link existing between the person accused and the narcotic drug"). "Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs." *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). "However, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt." *Id.*

The Texas Court of Criminal Appeals (CCA) has recognized that the following non-exhaustive list of "links" may circumstantially establish the legal sufficiency of the evidence to prove knowing possession:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the

11

accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 162 n.12 (quoting *Evans v. State*, 185 S.W.3d 30, 35 (Tex. App.—San Antonio 2005), *rev'd on other grounds by Evans*, 202 S.W.3d at 158). Our sister court has also identified the proximity of the contraband to the defendant's personal belongings as an additional link to be considered. *Villegas v. State*, 871 S.W.2d 894, 896 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The absence of links does not constitute evidence of innocence to be weighed against the links present. *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

In performing this review, "[i]t is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995). "Whether the evidence be direct or circumstantial, 'it must establish, to the requisite level of confidence, that the accused's connection with the [contraband] was more than just fortuitous.'" *Allen*, 249 S.W.3d at 691 (quoting *Brown*, 911 S.W.2d at 747); *see Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) ("The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs."), *abrogated on other grounds by Robinson v. State*, 466 S.W.3d 166 (Tex. Crim.

12

App. 2015). Ultimately, however, the links merely help to guide a reviewing court's analysis; the fundamental sufficiency inquiry is still the standard set forth in *Jackson*: "Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414.

The evidence in the record is sufficient to establish that either Nelson possessed the methamphetamine with Hill or as a party. The jury could have reasonably inferred that Nelson, as the truck's driver, was in close proximity and had access to the narcotics before they were thrown from the vehicle. *See Williams v. State*, 309 S.W.3d 124, 128 (Tex. App.—Texarkana 2010, pet. ref'd) (observing that "the location of the cocaine, inside the car before it was thrown out of the window, would suggest that Williams as the driver of the car was in close proximity to the cocaine"). He made a furtive gesture and exhibited consciousness of guilt by failing to stop the truck after Deputy Wilson activated his emergency lights, instead leading Deputy Wilson on an approximately nine-minute chase, in which Nelson swerved into the wrong lane and reached a speed of 100 m.p.h.[7] *See Davila v. State*, 749 S.W.2d 611, 613 (Tex. App.—Corpus Christi–Edinburg 1988, pet. ref'd) (where arresting officer observed passenger dispose of white powder and baggie out of passenger-side window, court concluded "furtive gesture of failing timely to stop the car on the shoulder of the road" was link tying defendant to heroin). The pursuit ended only when Nelson jumped from the truck and fled into the night. His phone, found in the truck's front seat, contained evidence indicating narcotics transactions. We

---

[7] Nelson posits that if he were the fleeing driver, his flight would suggest only a "consciousness of guilt from *fleeing to elude* a sheriff's deputy," not possession of a controlled substance with intent to deliver. Such an argument, however, not only begs the question as to *why* he would flee for several miles from an attempted traffic stop but runs counter to our obligation on review to consider the evidence in the light most favorable to the verdict. *See Jackson v. Virginia*, 443 U.S. 307, 313 (1979).

conclude that the logical force of these factors is sufficient to link Nelson to the methamphetamine, and the jury could therefore have reasonably concluded that he possessed the drugs with Hill. *See id.* (concluding "[defendant]'s hesitation in stopping the car clearly facilitated [passenger]'s disposal of the heroin," and that "[b]y helping to dispose of the heroin in this manner, appellant demonstrated that she both knew what the substance was and exercised care, control and management over it jointly with [passenger]"). Alternatively, the jury could have reasonably concluded that Hill possessed the methamphetamine and that Nelson, with the intent that the offense be committed, encouraged, directed, aided, or attempted to aid Hill's possession by fleeing from Deputy Wilson.

Similar to the links for establishing possession, the list of factors that our sister courts consider in determining whether a defendant had the intent to deliver includes "the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia, whether the defendant possessed a large amount of cash, and the defendant's status as a drug user." *Hughitt v. State*, 539 S.W.3d 531, 542 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019); *see Moreno v. State*, 195 S.W.3d 321, 325–26 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). These factors are not exhaustive, nor must all be present to establish an intent to deliver. *Hughitt*, 539 S.W.3d at 542. As with possession, "[t]he number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Moreno*, 195 S.W.3d at 326. Expert testimony from experienced law enforcement officers may be used to establish the intent to deliver. *Id.* (citing *Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.)).

There is sufficient evidence from which the jury could have reasonably concluded that Nelson intended to deliver the methamphetamine, either as the primary actor or as a party. We find his contention on appeal that "only a little over 2 ounces of methamphetamine," or approximately 61 grams, is "not indicative of a dealer's cache" unpersuasive. Indeed, cases from our sister courts support the conclusion that far smaller amounts are both sellable and suggestive of dealing. *See Gullatt v. State*, 368 S.W.3d 559, 563 (Tex. App.—Waco 2011, pet. ref'd) (finding that quantity of methamphetamine, 3.5 grams, supported conclusion that possession was with intent to deliver); *Biggers v. State*, 634 S.W.3d 244, 254 (Tex. App.—Texarkana 2021, pet. ref'd) (finding that evidence was sufficient to support jury's determination that defendant possessed methamphetamine with intent to deliver where two officers testified that 11.68 grams "was not a user amount, but a dealer amount").

Here, Investigator Barnes testified that an eighth of an ounce, or one-sixteenth of the amount possessed by Nelson, was "a large quantity." In addition, during the chase Nelson was driving a vehicle with temporary tags that was not registered to him, which the jury could have reasonably concluded was to aid in the delivery of the methamphetamine. Finally, Investigator Barnes testified that the second phone—which stored selfies of Nelson and his girlfriend as well as photos of Nelson's known acquaintances and the number for which was listed in Hill's phone under the initials of Nelson's alias—contained "several messages" "consistent with," or "that [Investigator Barnes] associate[d] with[,] . . . seeking to buy or sell narcotics." The most recent, received approximately 12 days before the methamphetamine was recovered in the present case, read, "What could get me a 20, brother?," which Investigator Barnes testified was in his experience a reference to narcotics because the sender was requesting a gram, or $20, "worth of dope." *See Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App.

15

1978) ("In determining whether one has participated as a party, the trial court may look to events occurring before . . . the commission of the offense and reliance may be placed on actions of the parties which show an understanding and common design to do a certain act.").

For these reasons, we conclude that the evidence was sufficient to allow a reasonable jury to find beyond a reasonable doubt that Nelson possessed the methamphetamine with an intent to deliver. We overrule his first two issues.

**Law-of-Parties Instruction**

In his third and fourth issues, Nelson contends that the trial court erred by submitting a law-of-parties instruction to the jury with respect to the count alleging possession of a controlled substance with intent to deliver and that the jury charge's language erroneously allowed the jury to apply the instruction to the count alleging evading arrest or detention. The relevant portion of the charge provides:

### III.

A person is responsible as a party to the offense if the offense is committed by his own conduct, by the conduct of another for which he is responsible, or by both. A person is responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense; he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to the offense.

### IV.

You are instructed that each charge alleges a separate offense and during your deliberations you are not to consider the verdict in one charge as evidence in the other charge.

### V.

Now, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about January 23, 2017, in

16

Lampasas County, Texas, the defendant SEAN PATRICK NELSON did then and there knowingly possess, with intent to deliver, a controlled substance, namely, Methamphetamine, in an amount of four (4) grams or more but less than 200 grams; OR, if you find from the evidence beyond a reasonable doubt that Joshua Hill did then and there knowingly possess, with intent to deliver, a controlled substance, namely, Methamphetamine, in an amount of four (4) grams or more but less than 200 grams, and that the defendant, SEAN PATRICK NELSON, did then and there, with intent to promote or assist the commission of said offense, solicit[], encourage[], aid[], or attempt[] to aid Joshua Hill to commit the offense, then you will find the defendant GUILTY of POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DELIVER, as charged in Count 1 of the indictment and say so by your verdict.

If you do not so find or if you have a reasonable doubt thereof, you will find the defendant NOT GUILTY of POSSESSION OF CONTROLLED SUBSTANCE WITH INTENT TO DELIVER as to Count 1 of the indictment, say so by your verdict, and consider the lesser included offense of POSSESSION OF CONTROLLED SUBSTANCE.

. . . .

## VI.

Further and bearing in mind the forgoing instruction, if you find from the evidence beyond a reasonable doubt that on or about January 23, 2017 in Lampasas County, Texas, the defendant SEAN PATRICK NELSON, did then and there while using a vehicle, intentionally flee from Justin Wilson, a person the defendant knew was a peace officer who was attempting lawfully to arrest or detain the defendant, then you will find the defendant GUILTY of EVADING ARREST - VEHICLE, as charged in Count 2 of the indictment and say so by your verdict.

If you do not so find or if you have a reasonable doubt thereof, you will find the defendant NOT GUILTY as to Count 2 of the indictment and say so by your verdict.

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury-charge error was preserved in the trial court. *Mendez v. State*,

17

545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury-charge error). If the jury-charge error has been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, .15, reversal is required if the appellant has suffered "some harm" from the error, which means the error "was calculated to injure the rights of the defendant." *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020); *see Almanza*, 686 S.W.2d at 171. If the charge error was not properly preserved, the error requires reversal only if the appellant suffered "egregious harm," which occurs when the error "created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *see Almanza*, 686 S.W.2d at 171.

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez*, 545 S.W.3d at 552; *see also Oursbourn v. State*, 259 S.W.3d 159, 175–81 (Tex. Crim. App. 2008) (explaining circumstances under which various voluntariness issues become "the law applicable to the case"). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions from the charge. *Mendez*, 545 S.W.3d at 552; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Mendez*, 545 S.W.3d at 552 (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

### Inclusion of instruction

In his third issue, Nelson contends that it was error for the trial court to include an instruction on the law of parties in the abstract portion of the jury charge because there was "no

evidence [he] harbored a specific intent to promote or assist the commission of the offense of possession or of intent to deliver or that he and Josh Hill were executing any common design or scheme regarding either."

The test for whether to submit a law-of-parties instruction to the jury was set forth in *McCuin v. State*, 505 S.W.2d 827 (Tex. Crim. App. 1974). *See Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996); *see also Brown v. State*, 716 S.W.2d 939, 944 (Tex. Crim. App. 1986) ("The *McCuin* test is still a viable means for determining when a cause should be submitted to the jury on the law of parties."); *Nunez v. State*, 215 S.W.3d 537, 543 (Tex. App.— Waco 2007, pet. ref'd) (applying *McCuin* test). The CCA in *McCuin* explained:

> Where the evidence introduced upon the trial of the cause shows the active participation in the offense by two or more persons, the trial court should first remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient in and of itself, to sustain the conviction, no submission of the law of [parties] is required.
>
> On the other hand, if the evidence introduced upon the trial of the cause shows, or raises an issue, that the conduct of the defendant then upon trial is not sufficient, in and of itself, to sustain a conviction, the State's case rests upon the law of principals and is dependent, at least in part, upon the conduct of another. In such a case, the law of principals must be submitted and made applicable to the facts of the case.

505 S.W.2d at 830.

Alternatively, the CCA has concluded that a law-of-parties instruction should be submitted "whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties," *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999), or if the instruction has been requested by the State, and there is "some evidence in

the record" for that theory of liability, *In re State ex rel. Weeks*, 391 S.W.3d 117, 125 (Tex. Crim. App. 2013).

No matter which standard is used, a law-of-parties instruction was warranted with respect to the charge alleging that Nelson possessed a controlled substance with intent to deliver. Although he argues that there was no evidence that he acted as a party with Hill and that this conclusion "is derived, in no small part, because . . . the methamphetamine found by sheriff's deputies near the truck could not be linked to Nelson," we concluded above that a reasonable jury could find both that Nelson possessed the methamphetamine, jointly or as a party, and intended to deliver it. In light of our conclusion, an instruction on the law of parties was appropriate in this case. Because inclusion of the instruction was not error, we need not conduct a harm analysis. *Arteaga*, 521 S.W.3d at 333. We overrule Nelson's third issue.

### Jury Confusion

In his fourth issue, Nelson contends that the trial court erred by using the phrase "bearing in mind the forgoing instruction" at the beginning of section VI, the application paragraph for the charge of evading arrest or detention, because it "invited the jury to apply the law-of-parties instruction to the felony evasion charge when it was not authorized[,] resulting in . . . harm to Nelson."[8] He argues that making the law-of-parties instruction applicable to the

---

[8] In his brief, Nelson asserts that he suffered "some" harm from the alleged jury charge error, suggesting that he objected to the allegedly misleading phrase at trial. *Almanza v.* State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). However, during the charge conference, he requested only that the law-of-parties instruction in section III "be deleted in its entirety" and that the third paragraph of section V, alleging the lesser-included offense of possession of a controlled substance, and "also contain[ing] the law of party language[, . . .] be deleted" as well. The trial court overruled both objections. Because Nelson did not object to the alleged jury charge error that he asserts on appeal, the appropriate harm standard is egregious harm.

charge of evading arrest or detention "result[ed] in confusion to the jury when it came to deciding the second count of [his] indictment."

A jury charge must not simply "avoid misleading or confusing the jury"; rather, it must "lead and prevent confusion." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)). "On appeal, we generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *see Casanova v. State*, 383 S.W.3d 530, 543 (Tex. Crim. App. 2012) (stating "the usual presumption" is that "jurors follow the trial court's explicit instructions to the letter"). The presumption is rebuttable, but the appellant bears the burden and must "point[] to evidence that the jury failed to follow the trial court's instructions." *Thrift*, 176 S.W.3d at 224.

There is no evidence in the record that the jury was confused by the inclusion of the phrase "bearing in mind the for[e]going instruction." Rather, the structure of the charge tended to mitigate any potential confusion. Immediately following the law-of-parties instruction in the abstract portion of the charge, the jury was expressly instructed that "each charge alleges a separate offense" and that it was not to "consider the verdict in one charge as evidence in the other charge." Moreover, the application paragraphs for count 1, alleging possession of a controlled substance with intent to deliver and the lesser-included offense of possession of a controlled substance, contained expansive language on the law of parties, authorizing the jury to convict if it found that Hill committed an offense and Nelson "with intent to promote or assist the commission of said offense, solicited, encouraged, aided, or attempted to aid Joshua Hill to commit the offense." The application paragraphs for count 2 contained no such language.

21

Even if we were to conclude that the charge erroneously instructed the jury to apply the law-of-parties instruction to count 2, we would also conclude that Nelson was not egregiously harmed by the error because there was ample evidence that Nelson was the principal actor in committing the offense of evading arrest or detention using a vehicle. *See Ladd*, 3 S.W.3d at 565 ("[B]ecause there was no evidence tending to show appellant's guilt as a party, the jury almost certainly did not rely upon the parties instruction in arriving at its verdict, but rather based the verdict on the evidence tending to show appellant's guilt as a principal actor."); *Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) (where "the evidence clearly supports a defendant's guilt as the primary actor, error in charging on the law of parties was harmless" and appellant's failure to show harm necessitates conclusion that he also failed to show egregious harm)).

That the truck's driver fled from Deputy Wilson's attempted traffic stop is uncontroverted. The evidence that Nelson was the fleeing driver included the following: (1) Investigator Barnes testified that the truck's "true owner," Waldrop, told him that he had loaned the truck to Nelson the night before the chase; (2) Investigator Barnes testified that from his review of the dash-cam video, Rollins, the individual to whom the truck was registered, did not appear to be the driver; (3) Investigator Barnes testified that Rollins had identified Nelson as the driver; (4) Deputy Wilson testified that after reviewing his dash-cam video, he was able to identify Nelson as the driver from Nelson's side profile; (5) Deputy Wilson testified that he did not believe Rollins would have been able to jump the fence; (6) DNA from a fresh bloodstain on a jacket matching the driver's, found in a nearby backyard, was consistent with Nelson's DNA profile; (7) a phone found in the truck's front seat contained selfies of Nelson and his girlfriend as well as photos of Nelson's known associates; (8) the cell phone's number was listed in Hill's

22

phone under "NS," the initials of Nelson's street name; (9) texts on the phone believed to be Nelson's were consistent with the buying and selling of drugs, and methamphetamine was recovered near the truck; (10) both Nelson and the driver had tattoos on their left calves; and (11) Investigator Barnes testified that Nelson's tattoo was "something that could be seen on the officer's dash[-]cam video." Considering all of the evidence of appellant's guilt as the principal actor, any error in the submission of the law-of-parties instruction was harmless. *See Ladd*, 3 S.W.3d at 564–65; *Cathey*, 992 S.W.2d at 466.

Because we conclude that the charge did not erroneously instruct the jury to apply the law-of-parties instruction to count 2 and, if it did, the error was harmless, we overrule Nelson's fourth issue.

## CONCLUSION

Having overruled all of Nelson's issues, we affirm the trial court's judgments of conviction.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Baker and Smith

Affirmed

Filed: June 3, 2022

Do Not Publish

23